NOT DESIGNATED FOR PUBLICATION

No. 126,354

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONNELL COPPAGE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Submitted without oral argument. Opinion filed July 5, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PICKERING, J.: Ronnell Coppage appeals both the summary denial of his fourth K.S.A. 60-1507 motion and the denial of his motion for postconviction discovery and inspection. Coppage contends that he provided sufficient information in his K.S.A. 60-1507 motion to show a colorable claim of actual innocence. He also argues that his postconviction discovery and inspection motion sufficiently identified the subject matter and explained why discovery was necessary to protect his substantial rights. After reviewing the record, we find no error and affirm.

1

Another panel of this court summarized the facts of Coppage's underlying convictions on his direct appeal for his January 1997 crimes.

"A police officer [Christopher Blake] in a marked car followed a vehicle in which Maurice D. Harris and Coppage were passengers. Harris and Coppage knew the officer was following their vehicle. Although the officer followed the vehicle for some time, he did not attempt to stop it.

"Finally, the vehicle stopped and two persons dressed in black exited the vehicle and began shooting at the officer's car as they walked toward it. The officer put the car in reverse and began to back up. The persons continued to advance towards the officer and continued to fire as the officer backed up.

"The officer estimated 10 shots were fired, 4 of which struck his vehicle. Three bullets struck the front bumper and one passed through the windshield on the driver's side striking the headrest of his seat. The officer was struck by glass but was otherwise uninjured.

"The vehicle left while the persons were firing and the persons ran from the scene. A second officer saw two persons dressed in black run behind a truck. The second officer apprehended one person, Harris, but the other person escaped.

"Harris was carrying .45 caliber ammunition, and the police later found a .45 caliber handgun in the area. The police also found a .38 caliber handgun behind the truck. Coppage, wearing black and with an empty gun holster, was found hiding in a nearby drainage pipe.

"Harris and Coppage were tried together. . . .

. . . .

"Harris and Coppage were both convicted of attempted first-degree murder and criminal damage to property. Coppage was also convicted of criminal possession of a firearm." *State v. Coppage*, No. 80,540, 1999 WL 35815180, at *1 (Kan. App. 1999) (unpublished opinion).

Since the conclusion of his direct appeal, Coppage has filed three K.S.A. 60-1507 motions, all of which were denied. See *Coppage v. State*, No. 105,575, 2012 WL

1649877, at *1 (Kan. App. 2012) (unpublished opinion); *Coppage v. State*, No. 94,468, 2006 WL 1816394, at *1 (Kan. App. 2006) (unpublished opinion); *Coppage v. State*, No. 87,191, 2003 WL 27393293, at *1 (Kan. App. 2003) (unpublished opinion). Coppage also filed a federal petition for habeas corpus, which was dismissed. *Coppage v. McKune*, No. 07-3024-SAC, 2008 WL 489304, at *1 (D. Kan. 2008) (unpublished opinion). In 2022, Coppage filed a fourth K.S.A. 60-1507 motion pro se, which is the subject of this appeal.

*Coppage's latest K.S.A. 60-1507 motion*

In his current K.S.A. 60-1507 motion, Coppage requests relief based on a colorable claim of actual innocence due to newly discovered evidence and "Ineffective Assistance of Trial, Appellate and Habeas Corpus counsel." He argues that there is newly discovered evidence of longstanding and widespread corruption in the Kansas City, Kansas Police Department (KCKPD), made discoverable by *McIntyre v. Unified Government of Wyandotte County*, No. 18-2545-KHV-KGG, 2021 WL 3186802 (D. Kan. 2021) (unpublished opinion).

Coppage claims that the jury "would have been more susceptible to the defense claims that they feared for their life and welfare" if it had been aware of the corruption investigation into the KCKPD. Coppage also alleges that Officer Christopher Blake committed perjury regarding his pursuit of Coppage's vehicle and committed misconduct concerning a cellphone call by Blake to KCKPD Officer James Gunzenhauser during the pursuit.

On the same day he filed his present K.S.A. 60-1507 motion, Coppage filed a pro se motion for postconviction discovery and inspection. He requested "documents reflecting misconduct of Officer Christopher Blake and Officer Jame[s] Gunzenhauser." He argued "that the information is relev[a]nt to KCKPD's custom of unconstitutional

3

misconduct, which led to the incident that resulted in Mr. Coppage's conviction." He then requested production of seven listed items.

The district court denied Coppage's K.S.A. 60-1507 motion as successive and untimely. The court found that Coppage failed to show a colorable claim of innocence, stating that Coppage failed to specify the *McIntyre* corruption revelations and did not say whether the same officers were involved in both his and the *McIntyre* case.

The district court also denied Coppage's postconviction discovery motion. The court found that Coppage gave "no indication why these items would be important, nor how the discovery would help protect his substantial rights." Coppage then filed a motion for reconsideration, which the district court denied. This appeal followed.

ANALYSIS

I.      THE DISTRICT COURT DID NOT ERR IN SUMMARILY DENYING COPPAGE'S K.S.A. 60-1507 MOTION

*Standard of Review*

When the district court summarily denies a K.S.A. 60-1507 motion, the appellate court exercises unlimited review to determine whether the motion, files, and records conclusively show that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022). When deciding whether the district court erred in summarily denying a K.S.A. 60-1507 motion as an abuse of remedy, the test is whether the movant "presented exceptional circumstances to justify reaching the merits of the motion, factoring in whether justice would be served by doing so." *Littlejohn v. State*, 310 Kan. 439, 446, 447 P.3d 375 (2019).

4

*We analyze Coppage's argument*

To obtain relief, a K.S.A. 60-1507 movant must show by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction," (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack," or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2023 Supp. 60-1507(b) (grounds for relief); see Supreme Court Rule 183(g) (2024 Kan. S. Ct. R. at 241) (preponderance burden).

When considering a K.S.A. 60-1507 motion, the district court has three options:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; (3) the court may determine from the motion, files, and records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

The movant bears the burden to show entitlement to an evidentiary hearing. The movant must make contentions with an evidentiary basis, or the basis must be evident in the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If the movant meets this burden, the court must hold an evidentiary hearing unless it is a successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

*Coppage's argument*

On appeal, Coppage challenges the district court's procedural dismissal of his K.S.A. 60-1507 motion, finding his motion to be both untimely and successive. Coppage argues that there is an insufficient appellate record on his ineffective assistance claims since the district court did not make factual findings or reach legal conclusions on those issues.

While Coppage concedes that his present K.S.A. 60-1507 motion is untimely, he claims his motion contained sufficient information for the district court to find manifest injustice. Coppage also acknowledges that his K.S.A. 60-1507 motion was successive. He asserts, however, that his actual innocence claim is an exceptional circumstance justifying his successive motion.

He asserts that an actual innocence analysis "as contemplated in *Beauclair . . .* may include the totality of the circumstances." In *Beauclair v. State*, 308 Kan. 284, Syl. ¶ 2, 419 P.3d 1180 (2018), the Kansas Supreme Court ruled that a "colorable claim of actual innocence based on a crime victim's recantation of the testimony that forms the basis for the charge against a defendant qualifies as an unusual event that prevented the defendant from raising the issue previously, and it excuses the procedural bar of successiveness under K.S.A. 60-1507(e)."

The State responds that 22 years after his convictions became final, Coppage filed his present untimely and successive K.S.A. 60-1507 motion. The State also counters that the district court correctly found that Coppage's "allegations were merely speculative and based on unsubstantiated innuendo." The State highlights the district court's finding that Coppage "provided no specific evidence that any of the officers involved in the *McIntyre* case were involved in his criminal case." Finally, the State contends that nothing in Coppage's motion shows how *McIntyre* proves Coppage's actual innocence.

6

Coppage bases his actual innocence claim on information revealing widespread corruption in the KCKPD made discoverable by *McIntyre*. He argued that had the evidence of KCKPD corruption been presented at his 1998 trial, the evidence would have warranted a self-defense jury instruction and the jury would have been more susceptible to self-defense arguments. He also alleged that the State should have known that the Federal Bureau of Investigation was investigating the KCKPD and such evidence should have been presented to the defense.

Coppage also alleged multiple acts of misconduct by Blake, including perjury, violation of protocol, and wrongful omissions. Coppage argues that Blake committed perjury and points to the contradiction between his and Blake's trial testimony. At trial, Coppage had testified that Blake maintained a visual on his car through Blake's entire pursuit, whereas Blake testified that he lost contact with Coppage's car and then later caught up to Coppage. Coppage further alleged that Blake had no lawful reason to continue pursuing his vehicle because dispatch had confirmed Coppage's car was not stolen and that Blake did not pull the car over despite claiming to observe multiple traffic violations.

Additionally, Coppage alleged that when Blake called Gunzenhauser on his personal phone during the pursuit, Blake's only reason to use his phone for police business was "if he wanted to say something that he didn't want dispatch to hear and record." He further argues that the jury would have questioned the validity of Blake's call to Gunzenhauser, which was omitted from the police report, if the jury had been advised of the KCKPD corruption evidence.

In its ruling, the district court rejected Coppage's actual innocence claim:

"However, plaintiff provides no further detail to augment his claim. He offers no details of corruption in the [*McIntyre*] case, nor does he mention any specific police personnel

7

involved. He also does not offer whether any of the same officers or detectives were involved in both his and the [*McIntyre*] case. Plaintiff attempts to impugn the character and testimony of the victim in his criminal case, Officer Christopher Blake[,] by attempting to tie him to the alleged corruption within the police department at the time. Again, plaintiff provides no specific evidence, only more unsubstantiated innuendo. Plaintiff is required to make more than conclusory contentions—he is required to provide actual evidence, or it must be apparent in the record."

Other panels of this court have considered newly discovered evidence claims stemming from police corruption allegations. In *Woods v. State*, No. 121,466, 2020 WL 4250651 (Kan. App. 2020) (unpublished opinion), Woods claimed that his trial counsel were ineffective for failing to obtain impeachment evidence on two officers in the case. He claimed a colorable claim of actual innocence based on a screenshot of a list from an unknown source purporting to show the top 10 most corrupt officers. The list included the officers involved in his case. The *Woods* panel rejected Woods' actual innocence claim, finding that aside from vague allegations in the screenshot from an unknown source, Woods did not specify what "'impeachment evidence'" about the officers in his case would have led to dismissal of his charges. 2020 WL 4250651, at *6. Woods also failed to show that he did not have the information during his prior K.S.A. 60-1507 motions or that it could not have been previously discovered. 2020 WL 4250651, at *6.

And recently, in *Oliver v. State*, No. 125,545, 2023 WL 8295996 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* January 2, 2024, Oliver filed a successive K.S.A. 60-1507 motion claiming newly discovered evidence of misconduct in the Wichita Police Department (WPD). He alleged that there was a news report detailing misconduct by WPD detectives, but he was unable to locate the story. The panel characterized Oliver's allegation as a "broad and vague allegation" about a news story aired on an unknown date and which was not presented to the district court. 2023 WL 8295996, at *2. The news report apparently contained unspecified information about a detective in Oliver's case. The panel concluded that "[c]onclusory contentions such as

Oliver makes here are insufficient to establish the basis for an evidentiary hearing." 2023 WL 8295996, at *2. The panel analogized Oliver's case to *Woods* and denied his actual innocence claim. 2023 WL 8295996, at *3.

Similarly, Coppage also makes vague allegations against the two officers. He does not explain what information regarding KCKPD corruption was released by *McIntyre*. Coppage does not provide any indication that either Blake or Gunzenhauser were involved in the *McIntyre* case or any other corruption revelations discovered therefrom. Nor does Coppage attempt to connect the *McIntyre* corruption information specifically to the two officers.

Further, several of Coppage's arguments were already presented to the jury at his trial. For instance, the jury was presented with evidence suggesting that Blake's cellphone call to Gunzenhauser was questionable. On cross-examination, Blake testified that the only time he indicated that he needed assistance to stop Coppage's vehicle was his phone call to Gunzenhauser. Trial counsel for Harris—Coppage's codefendant—asked Blake why he did not use his radio to ask dispatch for help. Blake claimed that he was going to stop Coppage's car and wanted Gunzenhauser there first, and then he would have told dispatch he was making a stop. On Gunzenhauser's cross-examination, questioning by Coppage's trial counsel revealed that Blake's cellphone call was not recorded, whereas a call over dispatch would be.

The jury convicted Coppage having heard such testimony. A general allegation of police corruption without connecting Blake and Gunzenhauser to that corruption, therefore, is insufficient to show that "it is more likely than not that no reasonable juror would have convicted" Coppage. See K.S.A. 2023 Supp. 60-1507(f)(2)(A). The district court did not err in summarily denying Coppage's fourth 60-1507 motion.

9

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING COPPAGE'S MOTION FOR POSTCONVICTION DISCOVERY

*Standard of review*

Appellate courts review a district court's decision to grant or deny postconviction discovery for abuse of discretion. *State v. Richardson*, 316 Kan. 752, 753, 521 P.3d 1111 (2022). The district court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

*We apply the* Mundo-Parra *two-part test*

In *State v. Mundo-Parra*, 58 Kan. App. 2d 17, 24, 462 P.3d 1211 (2020), another panel of this court outlined a two-prong test for allowing a defendant postconviction discovery: "[T]he defendant must make a good-cause showing (1) by identifying the specific subject matter for discovery and (2) explaining why discovery about those matters is necessary to protect substantial rights." To show that discovery is necessary to protect substantial rights, a defendant must show that "the requested discovery relates to a factual matter that could affect an essential right that potentially affects the outcome of the proceedings." *State v. Butler*, 315 Kan. 18, 23, 503 P.3d 239 (2022).

Coppage contends that the district court abused its discretion in denying his motion because the court erred as a matter of law and fact. He asserts that "[l]iberally construed, [his] motion has met both prongs of the *Mundo-Parra* test, as it specified the materials requested, and also established . . . that this was to protect his due process rights, and by logical and practical inference, the right of habeas corpus." Coppage submits that although he initially asserted protection of his due process rights by citing to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the better

citation would have been *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). He also claims that by filing his postconviction discovery motion alongside his K.S.A. 60-1507 motion, he asserted protection of his right to habeas corpus.

The State responds that Coppage failed to show how the information requested in his motion would have changed the outcome of his trial. The State explains that while Coppage requested phone logs, among other items, "the jury could interpret for itself whatever implications may have arisen from [the phone conversation between Blake and Gunzenhauser]." The State also counters that because courts entertained Coppage's four prior postconviction motions, Coppage has not been denied his right to habeas corpus.

*Coppage's postconviction discovery request*

Coppage moved for postconviction discovery in connection with his case "as soon as possible prior to K.S.A. 60-1507 hearing." He cited to *Brady* along with the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in the motion, among other citations. He explained that his motion sought an "order compelling the State to produce documents reflecting misconduct of Officer Christopher Blake and Officer Jame[s] Gunzenhauser. Coppage argue[s] that the information is relev[a]nt to KCKPD's custom of unconstitutional misconduct, which led to the incident that resulted in Mr. Coppage's conviction." Coppage then listed seven items for discovery.

> "1.) Time stamped copy of Officer Christopher Blake's call to dispatch to run the tags of the vehicle that Mr. Coppage was riding in on the morning of January 11, 1997.
>
> "2.) Time stamped copy of the cell phone call by Officer Christopher Blake to Officer James Gunzenhauser showing what time the call was made and how long the call lasted.
>
> "3.) Any documents, reports, statements and interviews concerning misconduct, and corruption by KCKPD known before Mr. Coppage's trial.

"4.) Documentation of all arrest of Mr. Coppage by the Denver Police Department from February 1996 to April 1996, and all charges from the same time period.

"5.) Copy of the 911 call made by Faris Carter from the . . . E. 33rd Ave Denver,[]CO residence phone in April 1996.

"6.) Medical records from the Denver County Jail of Mr. Coppage from April 1996 to June 1996.

"7.) Any documents, reports, statements and interviews concerning misconduct and or corruption allegations of Officer Christopher Blake and Officer James Gunzenhauser, after the trial and conviction of Mr. Coppage."

The district court denied the motion and made the following findings.

"Plaintiff does not pass either [*Mundo-Parra*] test here. He requests dispatch logs and cell phone records from twenty-five years ago, arrest and hospital records from Denver, Colorado, and documents concerning police corruption in the Kansas City, KS Police Department, in general and from the two main officers involved in his case. Plaintiff gives the court no indication why these items would be important, nor how the discovery would help protect his substantial rights. Once again and without any clear evidence, plaintiff seeks to piggyback on the allegations of corruption involved in other KCKPD cases. Plaintiff has not met the [*Mundo-Parra*] test."

In support of his argument, Coppage contends that his case is distinguishable in part from *Butler*. There, Butler had been convicted of felony murder following a home invasion. He filed a motion for postconviction discovery with two discovery requests. He first requested the cellphone number and service provider of a coconspirator and a witness. He also requested the statements to police by witnesses of the home invasion. He asserted that discovery was necessary to protect his right to impeach the State's witnesses. He claimed that the phone records would reveal one witness as an accomplice and impeach the witnesses' testimony that he was not involved in the crime. Butler also claimed the witnesses' statements would impeach other witnesses' testimony regarding his motivation for robbing the home.

12

The *Butler* court concluded that while Butler had satisfied the first *Mundo-Parra* prong by clearly identifying the subject matter for discovery, he failed to satisfy the second *Mundo-Parra* prong. *Butler,* 315 Kan. at 21, 23. The postconviction discovery request failed to call "his convictions into question or otherwise show[] that discovery was necessary to protect substantial rights." 315 Kan. at 23. Regarding the phone records, the *Butler* court explained that there was already evidence presented at trial implicating the witness at issue in the crimes. The court also noted that the requested witnesses' statements could not have been introduced at trial because those witnesses were not called to testify. 315 Kan. at 23.

Coppage asserts that we should find that his case is distinguishable from *Butler* in that his motion called his convictions into question. And he has shown that the discovery's purpose was to pursue a habeas corpus challenge and protect his due process rights.

Our review shows that outside of the vague request of Coppage's postconviction discovery request No. 3—"Any documents, reports, statements and interviews concerning misconduct, and corruption by KCKPD known before Mr. Coppage's trial"—Coppage satisfied the first *Mundo-Parra* prong; Coppage's postconviction discovery motion identified the subject matter for discovery. See *Butler*, 315 Kan. at 21. Coppage, however, failed to satisfy the second *Mundo-Parra* prong, which requires Coppage to show that "the requested discovery relates to a factual matter that could affect an essential right that potentially affects the outcome of the proceedings." *Butler*, 315 Kan. at 23.

While Coppage cited to *Brady* and the Fifth, Sixth, and Fourteenth Amendments in his postconviction discovery motion and filed his motion alongside his K.S.A. 60-1507 motion, Coppage has not shown any reports of misconduct by Blake or Gunzenhauser. He only relies on reports and investigations into the KCKPD generally. Without a factual basis for misconduct by Blake and Gunzenhauser, Coppage fails to show that his

13

discovery request did relate to a factual matter and, thus, potentially affected the trial's outcome. The district court did not abuse its discretion in denying Coppage's postconviction discovery motion.

Affirmed.